No. ——
First Circuit

---

SCHULTZ ET AL v. BATON ROUGE ELECTRIC CO.

---

(December 6, 1927. Opinion and Decree) (January 5, 1928. Rehearing Refused)

---

(*Syllabus by the Editor*)

1. Louisiana Digest—Electricity—Par. 6, 8.
Where the evidence shows that the electric company was not negligent in placing its wires in a house and that, although occupant of the house was injured by lightning, it did not come through the cord of the drop light because, had it done so, it would have burned the fuses and left other evidence of its passage, there cannot be any liability of the electric company for the damage done by the lightning.

Appeal from the Parish of East Baton Rouge. Hon. Geo. K. Favrot, Judge.

Action by Carl F. Schultz et al. against Baton Rouge Electric Co.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Cross & Moyse, of Baton Rouge, attorneys for plaintiff, appellee.

Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for defendant, appellant.

LECHE, J. Defendant appeals from a judgment for two thousand dollars, damages said to have been suffered by Mrs. Carl F. Schultz, and both she and her husband, who are plaintiffs, have answered the appeal and pray that damages be increased and allowed as prayed for in their original petition, twenty-five thousand dollars for Mrs. Schultz and ten thousand dollars for Mr. Schultz.

The complaint of plaintiffs is that Mrs. Schultz was painfully injured and permanently disabled by an electric current which passed through her body, from her head to her feet, on the night of June 26, 1926, during a severe thunder storm, and that the electric current which thus injured her was conducted into her home thence through her body by service wires which at some time previous had been used to connect the premises for the purpose of illumination, with defendant's electric light plant situated in the City of Baton Rouge.

They further complain that defendant had been requested to remove entirely from their premises, the service wires which had served to connect their said premises with its electric lines strung on poles along the street; that defendant promised to comply with their request but through indifference or negligence failed to do so and thus, through the fault and negligence of defendant, the electric current which injured Mrs. Schultz was by means of said unremoved service wires conducted into their premises and caused

the physical and permanent injuries with which Mrs. Schultz has been afflicted.

Plaintiffs' residence is situated at 305 Main Drive, North Highlands, a suburb just outside the municipal limits of the city of Baton Rouge. The building was erected in the early part of 1924 by A. L. Walker, who caused it to be wired by Felder, an electrical contractor, for the purpose of having it lighted by electricity and to obtain the use of electric current for other domestic purposes. Walker sold the building about the month of June, 1925, and, although it is not made clear by the record, by whom the request was made, the electric service was then discontinued, and defendant proceeded, as was its custom, to take out its electric meter and to cut out and disconnect the secondary or hot wire which had connected the premises with its main line wires strung on its poles along the street in front of the premises. The plaintiffs bought the house on June 20, 1925, and moved into it on July 4, 1925, but did not care to obtain electrical service, as they did not feel able to stand that expense.

Plaintiffs claim that they requested defendant to remove from their premises the connecting service wires. This is denied by defendant, and much testimony was adduced pro and con on that subject. A discussion of the testimony taken upon that question would be merely academical, as from the view we have taken of the case the solution of that issue would have no bearing upon the merits of the controversy between the parties.

The Schultz home faces south on North Highland Drive, near the corner of Woodland Drive. The wires which at one time entered the house at its southeast corner were connected with defendant's electric line along North Highland Drive. On the night of the accident, about 10:30 P. M.,

June 26, 1926, during a rain and thunder storm, Mrs. Schultz had gone to a bedroom next to the northwest corner of the house, in order to place some sacks under a door for the purpose of keeping rain water from entering into that room between the door sill and the bottom of the door. Her son, Irving, was assisting her and her husband was standing near the door that led into that room from the front bedroom situated at the southwest corner of the house. Mrs. Schultz was standing almost directly under an electric light cord at the end of which was an empty socket, the electric light bulb having previously been taken out of it, when suddenly a bolt of thunder emanated from the rain clouds, penetrated into the room, and both Mrs. Schultz and her son were shocked and thrown to the floor. Mr. Schultz says the whole room was aglow with electricity and his belief is that the electricity was brought into the house along the unremoved service wires, and that the current which felled Mrs. Schultz came from the electric light cord, the end of which was from eight to twelve inches from her head.

One of defendant's electric light poles, the second one away from plaintiff's premises, a distance of approximately 250 feet or over from the point where the house connection had existed, was by the same stroke of lightning shattered about four feet below the crossarms attached across the top of it, and plaintiffs, believing that the electric current from the lightning which struck the shattered pole, had entered their home by the unremoved service wires which served as a conduit from the street wires, charge in substance that the failure of defendant to remove the connecting service wires was gross negligence. They therefore claim that the damage suffered by them was caused by the fault of defendant.

Much testimony was adduced as to the nature and amount of injury inflicted on Mrs. Schultz as a result of the electric shock, the damage suffered by her, as also that suffered by her husband by reason of her incapacitated physical condition, but the fundamental question to be primarily decided is whether the defendant was at fault.

The manner in which the premises of plaintiff had been disconnected from defendant's electric street line was by removing the meter from the house, then unwrapping the insulation around the secondary or hot wire at a point near the crossarm of the pole to which it was attached, then cutting that wire and bending down the two ends so they would be about three or four inches apart. Every electrician who testified in the case said that this method of disconnection was absolutely safe and was the usual way in which disconnections were made. To have entered plaintiffs' house by this wire, the electric current from the stroke of lightning would have had to arc or jump the gap made by the cut in the wire; it would also have had to jump another gap made by removal of the meter and still another gap across the switch which is admitted to have been open at the time. Again, it is shown that the fuses in the switch box and in the socket which was above Mrs. Schultz' head, were intact and unmelted. Then again for the electric current to have followed the course claimed by the plaintiffs, another and a larger gap from ten to twelve inches below the empty socket of the drop light would have had to be traversed or leaped through to reach Mrs. Schultz' head.

M. C. Smith, J. L. Pillow, J. E. Sheehan and Paul A. Burvant, reputable graduated electrical engineers and experts on that subject, all testified that it was impossible for the electric current which shocked Mrs. Schultz to have entered the building, under the proven conditions, through the course and along the lines contended for by the plaintiffs.

Electricity emanating from lightning is one of the forces of nature which man has not yet been able to control. It is conceded that little is known as to its intensity, quantity and resistance, that its units of measurement as applied to dynamic or manufactured electricity, in volts, amperes, watts and ohms, are unknown; that it is a freakish and eccentric force and its effects often unexplainable, when compared with known results in the application of dynamic or manufactured electricity. Mr. Schultz says that his whole house was lighted by the flash of electricity. Mr. Albritton, whose home is across the street and nearly opposite that of plaintiffs, says that his house was wired for electricity, that he used electricity for lighting purposes, that on the same occasion all the fuses in his house were blown out, and that his whole house was lighted up by electricity from the same flash of lightning. It is also shown that another house, adjoining that of plaintiffs, on the same side of the street, and situated between the shattered pole and the house of plaintiffs, was also similarly affected and some damage was done therein to a screen door by the same bolt of thunder.

The most logical and reasonable explanation of these phenomena is offered by Mr. Pillow, who says that the "whole charge of electricity from a stroke of lightning does not necessarily come down in one place. It comes down split. It frequently strikes several houses or objects in the same vicinity". That is most probably what took place when Mrs. Schultz was injured. It is impossible to say how the

current of electricity entered the house, but the evidence is convincing as testified by all the experts who testified in this case, that it could not come through the cord of the drop light, without burning the fuses and leaving other evidence of its passage through that conduit.

The record is replete with testimony showing the great misfortune of the two plaintiffs, good, quiet and industrious citizens of the community. But the sympathy which arises from the reading of that testimony snould not be allowed to becloud the real issue in the case: Did this misfortune come upon plaintiffs through the fault and negligence of defendant? We are convinced, after careful consideration of all the evidence, that there was neither fault nor negligence on the part of defendant and therefore that plaintiffs' demand should be refused.

For these reasons the judgment of the District Court is avoided and reversed and plaintiffs' demand rejected at their costs.